IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 24-CR-401-GKF |
| RYAN DUKE HAIGHT, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Ryan Duke Haight was indicted in December, 2024 for one count of Sexual Abuse of a Minor in Indian Country pursuant to 18 U.S.C. §§ 1151, 1153, and 2243(a) (Count One), and two counts of Abusive Sexual Contact with a Minor in Indian Country pursuant to 18 U.S.C. §§ 1151, 1153, and 2244(a)(3) (Counts Two and Three).

Jury trial began on May 19, 2025. At the close of the government's evidence, defense counsel moved for judgment of acquittal on all three counts. This court denied the motion as to Counts One and Two but, pursuant to Fed. R. Crim. P. Rule 29(b), which permits a court to decide the motion after the jury renders a verdict of guilty, reserved its decision on Count Three. On May 22, 2025, the jury returned guilty verdicts on all three counts. The court now considers defendant's Motion for Judgment of Acquittal on Count 3. Pursuant to Rule 29(b), the court must decide the motion on the basis of the evidence at the time the ruling was reserved.

### Legal Standard

Upon a motion for acquittal under Rule 29, the trial court must evaluate the evidence and enter such judgment when the evidence is insufficient to sustain a conviction. In so doing, the evidence must be considered in the light most favorable to the government and benefit given to it of all inferences which can reasonably be drawn from the evidence. *United States v. Acree*, 466

F.2d 1114, 1117 (10th Cir. 1972).

When reviewing the sufficiency of the evidence, a court may not weigh conflicting evidence. *United States v. Goldesberry*, 128 F.4th 1183, 1191 (10th Cir. 2025) (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993)). At the same time, the court "must be vigilant in enforcing the constitutional standard that protects an accused against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 1192 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)) (internal citations omitted).

In approaching the sufficiency issue, the court must consider the burden of proof and determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Id.* The court must consider the collective inferences to be drawn from the evidence as a whole. *Id.* Finally, the court may ask "whether the evidence 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence'—that is, whether the evidence is in *equipoise*." *Id.* at 1193 (quoting *United States v. Lovern*, 590 F.3d 1095, 1107 (10th Cir. 2009)). When the trial record—after it is properly construed for the government—is in equipoise, the motion for acquittal must be granted because "under these circumstances a reasonable jury *must necessarily entertain* a reasonable doubt." *Id.*

As previously mentioned, Count Three charges the defendant with Abusive Sexual Contact with a Minor in Indian Country pursuant to 18 U.S.C. §§ 1151, 1153, and 2244(a)(3). These statutes make it a federal crime for an Indian person to knowingly engage in sexual contact with a minor who has attained the age of 12 years, but has not attained the age of 16 years, and is at least four years younger than the defendant, in Indian Country.

The parties stipulated that the defendant is an Indian person and that the charged conduct

occurred in Indian Country. There is no dispute that A.S.—the victim alleged in Count Three—was at least 12 years old but not yet 16 years old at the time of the charged conduct.[1] Nor is there a dispute that A.S. is at least four years younger than the defendant.[2] The element at issue is whether the defendant knowingly engaged in "sexual contact" with A.S. The term "sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(3).

    A.    *The Evidence as to Count Three*

A.S. and her family were neighbors of the Haight family. On July 5, 2024, A.S., her father, stepmother, and stepbrother attended a party at the Haights' home. After a short while, A.S.'s parents were ready to leave. A.S. had no friends at the party, so she left with her parents for home. After they got home, A.S. invited I.M., a school friend, to come over, and the two decided to go to the party. But before they went, A.S. received a text message from an unknown number asking: "Did you bail on us?" When they got to the party, the defendant asked A.S. why she hadn't texted him back.

A.S. and I.M. went inside to the kitchen for food. The defendant took them to get sodas from a refrigerator located in an adjoining room. The room was "pretty dark." The defendant opened the refrigerator door with his right hand. As he opened the door, A.S. felt the defendant's left hand on the middle of her back, underneath her loose, crop shirt, on the strap of her sports bra. The defendant then "flicked" her bra strap and removed his hand.

A.S. and I.M. got their drinks, and the three went back to the kitchen where others were

---

[1] A.S. was fifteen years old at the time of the incident.
[2] The defendant was forty-five years old at the time of the incident.

3

present. They stayed in the kitchen for "maybe like five minutes," during which the following occurred:

> Q. .... When's the first time Ryan touched your butt at the 4th of July party?
>
> A. When we were inside by the kitchen table.
>
> Q. Was that after the refrigerator room?
>
> A. Yes.
>
> Q. Tell us about that.
>
> A. We were just sitting there and it was kind of like a -- not really like a full-on but just it was there.
>
> Q. You're saying it wasn't Ryan's full hand that touched your butt?
>
> A. Correct.
>
> Q. This touching was different from the outside touch -- front-yard touching?
>
> A. Yes.
>
> Q. How was this first touching different?
>
> A. It was like a graze.
>
> Q. How did you know it was Ryan's hand that grazed your butt?
>
> A. Because I knew. He was standing right beside me.
>
> Q. Was there any other adult man standing beside you?
>
> A. No.
>
> Q. When he grazed your butt, again, was this outside the clothes?
>
> A. Yes.
>
> Q. Outside your shorts?

4

> A. Yes.
>
> Q. How long did his hand make contact with your butt?
>
> A. We were having a conversation so not that long.

Haight then told A.S. and I.M. he had to go check on the kids. So A.S. and I.M. went to the driveway and watched A.S.'s stepbrother and his friends shoot fireworks in the front yard. The defendant later brought each of the girls a roman candle and told them to shoot the candles at each other. The girls shot the fireworks but didn't point them at each other. A.S. testified to what followed:

> Q. So the first time with the Roman candles you don't shoot them at each other. What do you do after that?
>
> A. I think we just stand around the kids again.
>
> Q. And does Ryan give you another Roman candle?
>
> A. Yes.
>
> Q. Tell me about that interaction.
>
> A. He tells us that we didn't shoot them at each other right. And so then he gives us another one and so we start to go outside and do it.
>
> Q. Were you already outside or were you inside?
>
> A. I can't remember if he gave them inside or outside.
>
> Q. He gives them to you. You go to a space kind of away from people?
>
> A. Yes.
>
> Q. Does Ryan go with you?
>
> A. No.
>
> Q. Before you go use the second Roman candle, does Ryan touch your body anywhere?

A. Yes.

Q. Where does Ryan touch your body?

A. The butt.

Q. Presumably you had clothes on?

A. Yes.

Q. And was Ryan touching your butt over the clothes?

A. Yes.

Q. What type of bottoms were you wearing?

A. Shorts.

Q. Tell me about how you knew it was Ryan's hand and what you felt on your butt.

A. Well, I don't know. Again, a man's hand like -- it was just obvious and it was like a push-off kind of thing.

Q. Was Ryan the only man standing near you?

A. Yes.

Q. Do you know if Ryan touched your butt with his right or left hand?

A. Right.

Q. How do you know it was his right hand?

A. Because Bella was on my left.

Q. You said he kind of pushed your butt?

A. *(Nods head)*

Q. Is that a "yes"?

A. Yes. Sorry.

> Q. Once he makes contact with your butt, how long is his hand touching you?
>
> A. Maybe like five seconds.
>
> Q. So he -- and correct me where I get this wrong – he touches your butt, you describe kind of a push, and do you walk forward?
>
> A. Yes.

At the same time the defendant pushed A.S. on her buttocks, he was also pushing I.M. with his other hand on her back toward the front yard where the two could shoot their roman candles.

Later, when A.S. and I.M. decided to leave the party, A.S. discovered a spider on her side-by-side[3] and returned to the house to ask the defendant to remove it. The defendant asked whether she was being a "gina" (a slang term for vagina), removed the spider with a stick, and, "kind of in a whisper," told A.S. "[n]ow you owe me."

### B. The Charged Conduct

As previously stated, the term "sexual contact" includes the intentional touching of the buttocks through the clothing, with the specific intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The defendant indisputably touched A.S.'s buttocks through the clothing. The issue presented here is whether the government adduced sufficient evidence that he touched A.S. with the requisite specific intent.

A.S. described the defendant's touch as "a push-off kind of thing" and a "push." However, A.S. testified that his hand touched her "maybe like five seconds." At the same time the defendant pushed A.S., he pushed I.M. on her back with his other hand, directing the girls to go shoot roman candles.

---

[3] A "side-by-side" is an off-road vehicle with a roll cage. Testimony established that these types of vehicles were common for travel in the neighborhood.

7

The court considers the collective inferences to be drawn from the evidence as a whole and considers the evidence and all reasonable inferences in the light most favorable to the government.

### C.     Inferences of Specific Intent

In evaluating the inferences of specific intent that may be drawn from the evidence, the court may not "examine the evidence in bits and pieces but instead considers the collective inferences to be drawn from the evidence as a whole." *United States v. Goldesberry*, 128 F.4th 1183, 1192 (10th Cir. 2025) (internal citations omitted).

The evidence as a whole shows that the defendant noticed A.S.'s absence from the party and asked why she "bail[ed]." He snapped the strap of her sports bra. He grazed her buttocks in the kitchen. Before removing the spider from her side-by-side, he asked A.S. whether she was being a "gina" and told her she owed him. It also shows that the touch underlying the charge in Count Three involved the defendant pushing A.S. on her buttocks with his right hand while simultaneously pushing I.M. on her back with his left. The evidence gives rise to two alternative inferences. The first is an inference of specific intent to arouse or gratify the sexual desire of the defendant when he touched A.S. on her buttocks for as long as five seconds. The second is an inference that the defendant intended to direct the girls to the front yard to shoot roman candles. *Compare United States v. Aguilar*, No. CR-21-0670-JB, 2024 WL 3401090, at *11 (D.N.M. July 12, 2024) ("[t]here is no indication in the record of any non-sexual purpose that would lead Aguilar . . . to touch the genitalia, buttocks, and breasts of his twelve-year-old niece.").

An inference "must 'be made beyond a reasonable doubt if it 'goes to an ultimate conclusion underpinning criminal liability, e.g., satisfying an element of a crime necessary for conviction.'" *Id.* at 1192–93 (quoting *United States v. Summers*, 414 F.3d 1287, 1295 n.4 (10th Cir. 2005)). The specific intent "to abuse, humiliate, harass, degrade, or arouse or gratify the

sexual desire of any person" is an element of the crime charged in Count Three. 18 U.S.C. § 2246(3); *Castillo*, 140 F.3d at 886. Thus, an inference of that specific intent must be made beyond a reasonable doubt.

Having considered the collective inferences to be drawn from the evidence as a whole, the court finds and concludes that inferences of both sexual and non-sexual intent exist on the record.

D.   *Equipoise*

Viewing the evidence and inferences in the government's favor, the court finds and concludes that the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence. A.S. described the touching as "a push-off kind of thing" that lasted "maybe like five seconds." Assuming, as the court must, that the push lasted five seconds, five seconds is a long time for forty-five-year-old man's hand to push a fifteen-year-old girl's buttocks. On the other hand, when the defendant pushed A.S. on her buttocks, he was also pushing I.M. on her back toward the front yard where the pair could shoot their roman candles. The evidence thus gives equal or nearly equal circumstantial support to a theory of innocence. Based upon the evidence at the time the defendant's Rule 29 motion was reserved, the court concludes that a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt on Count Three of the Indictment.

WHEREFORE, the defendant's Motion for Judgment of Acquittal as to Count Three is granted.

IT IS SO ORDERED this 2nd day of June, 2025.

*[signature]*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma